1   JENNER & BLOCK LLP
2   Andrew J. Thomas (SBN 159533)
    ajthomas@jenner.com
3   David R. Singer (SBN 204699)
    dsinger@jenner.com
4   Lisa J. Kohn (SBN 260236)
    lkohn@jenner.com
5   633 West 5th Street, Suite 3600
    Los Angeles, CA 90071
6   Telephone:  (213) 239-5100
    Facsimile:  (213) 239-5199
7
8   Attorneys for Plaintiffs
    Fifty Shades Limited and
9   Universal City Studios LLC

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14   FIFTY SHADES LIMITED, a United          Case No. **CV12-10111-ABC (SHx)**
     Kingdom private company; and
15   UNIVERSAL CITY STUDIOS LLC, a           **COMPLAINT FOR:**
     Delaware limited liability company,
16                                           **[1] COPYRIGHT INFRINGEMENT
                  Plaintiffs,                [17 U.S.C. § 501]**
17
            v.                               **[2] FALSE DESIGNATION OF
18                                           ORIGIN [15 U.S.C. § 1125]**
     SMASH PICTURES, INC., a
19   California corporation; LUV MOVES,      **[3] FALSE ADVERTISING [15
     a business entity of unknown form;      U.S.C. § 1125]**
20   DANIEL QUINN, an individual;
     STUART WALL, an individual;             **[4] TRADEMARK DILUTION [15
21   JAMES LANE aka JIM POWERS, an           U.S.C. § 1125]**
     individual; RIGHT ASCENSION,
22   INC., d/b/a ADULT DVD EMPIRE, a         **[5] VIOLATION OF CAL. BUS. &
     Pennsylvania corporation; and DOES 1    PROF. CODE § 17200**
23   through 10, inclusive,
                                             **[6] VIOLATION OF CAL. BUS. &
24                Defendants.                PROF. CODE § 17500**

25                                           **[7] COMMON LAW UNFAIR
                                             COMPETITION**
26
                                             **DEMAND FOR JURY TRIAL**
27

28
     _____

                                                                    COMPLAINT

Plaintiffs Fifty Shades Limited ("FSL") and Universal City Studios LLC ("Universal") (collectively, "Plaintiffs") bring this action against defendants Smash Pictures, Inc. ("Smash Pictures"), Luv Moves, Daniel Quinn, Stuart Wall, James Lane aka Jim Powers, and Right Ascension, Inc., doing business as Adult DVD Empire ("Right Ascension") (collectively, "Defendants") for injunctive relief and damages and allege as follows:

## NATURE OF THE ACTION

1.      This action arises out of Defendants' knowing and willful violation of Plaintiffs' copyrights in E L James's bestselling novels *Fifty Shades of Grey*, *Fifty Shades Darker*, and *Fifty Shades Freed* (the "Fifty Shades Trilogy") by way of the production and distribution of adult films that take wholesale the dialogue, characters, and storyline from the Fifty Shades Trilogy, as well as Defendants' blatant trademark infringement and unfair competition in the marketing and sales of their infringing works.

2.      FSL holds copyright and common law trademark rights in the wildly popular Fifty Shades Trilogy, and Universal is the owner of exclusive rights to produce and distribute motion pictures based on the Fifty Shades Trilogy.  Global sales of the Fifty Shades Trilogy have exceeded 40 million copies since its release in 2011, with almost 20 million copies sold in the United States alone.

3.      In a willful attempt to capitalize on the reputation and popularity of the Fifty Shades Trilogy, Defendants have produced and are selling and distributing an adult film titled *Fifty Shades of Grey: A XXX Adaptation* (the "First XXX Adaptation") and are currently producing two additional infringing adaptations of *Fifty Shades Darker* and *Fifty Shades Freed* (collectively, the "XXX Adaptations").

4.      The DVD box for the First XXX Adaptation promotes the infringing work as "[b]ased upon" the Fifty Shades Trilogy and as "[putting] the kinky fantasies that you only imagined into vivid color."  According to a Smash Pictures

1   executive's interview with *L.A. Weekly*, the First XXX Adaptation is "very true to

2   the book," with the script written "to be as close to the series as [director Jim

3   Powers] can get."  Due to the popularity of the Fifty Shades Trilogy, Smash

4   Pictures expects that the First XXX Adaptation "just might be our biggest film to

5   date."

6        5.     By lifting exact dialogue, characters, events, story, and style from the

7   Fifty Shades Trilogy, Smash Pictures ensured that the First XXX Adaptation was,

8   in fact, as close as possible to the original works.  Beginning with the First XXX

9   Adaptation's opening scene and continuing throughout the next two and a half

10  hours of the film, Smash Pictures copies without reservation from the unique

11  expressive elements of the Fifty Shades Trilogy, progressing through the events of

12  *Fifty Shades of Grey* and into the second book, *Fifty Shades Darker*.  The First

13  XXX Adaptation is not a parody, and it does not comment on, criticize, or ridicule

14  the originals.  It is a rip-off, plain and simple.

15       6.     Defendant Smash Pictures further capitalized on the success of the

16  Fifty Shades Trilogy by using the First XXX Adaptation to launch its new adult

17  novelty company, Luv Moves.  In approximately mid-October 2012, Luv Moves

18  introduced its first product, "Fifty Shades of Pleasure: Play Kit & Movie," a

19  package that includes a DVD copy of the First XXX Adaptation and various adult

20  novelty items used in the Fifty Shades Trilogy and the First XXX Adaptation (the

21  "Luv Moves Package").  The Luv Moves Package and the XXX Adaptations are

22  collectively referred to as the "Infringing Works."

23       7.     Defendants also are using without authorization FSL's FIFTY

24  SHADES, FIFTY SHADES OF GREY, FIFTY SHADES DARKER, FIFTY

25  SHADES FREED, CHRISTIAN GREY, and ANASTASIA STEELE trademarks

26  (collectively, the "Fifty Shades Trademarks") in the advertising and sale of the

27  Infringing Works in order to deceive the public and compete unfairly with

28  Plaintiffs.  The marketing efforts surrounding the Infringing Works attempt to

-3-

trade on the popularity and goodwill associated with the Fifty Shades Trilogy and attempt to divert potential customers away from the Fifty Shades Trilogy through the use of the Fifty Shades Trademarks in the titles of the Infringing Works and in associated promotional materials.

## JURISDICTION AND VENUE

8.     This is a civil action against Defendants for copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, for false designation of origin and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for violations of California statutory and common law.

9.     This Court has subject matter jurisdiction over this matter pursuant to 17 U.S.C. § 501(a), 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, in that it involves an action arising under the federal Copyright Act and the federal Lanham Act.

10.     This Court has personal jurisdiction over Defendants because, among other things, they (i) reside in and/or are doing business in this State and District; (ii) have intentionally engaged in acts targeted at, and which have caused harm in, this State and District; (iii) have purported to enter into agreements with residents of this State and District; (iv) have purposefully availed themselves of the privileges and protections of conducting activities in this State and District; and (v) have committed the wrongful acts complained of herein in this State and District.

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a) because the claims arise in this District, and Defendants may be found in and/or conduct substantial business in this District, including the production, sale, marketing, and distribution of the Infringing Works.

**THE PARTIES**

12.   Plaintiff Fifty Shades Limited is a United Kingdom private company, with its principal place of business at 18 Clifden Road, Middlesex, United Kingdom.  FSL is owned by author E L James, and holds the copyrights in Ms. James's bestselling novels *Fifty Shades of Grey*, *Fifty Shades Darker*, and *Fifty Shades Freed* and the trademarks FIFTY SHADES, FIFTY SHADES OF GREY, FIFTY SHADES DARKER, FIFTY SHADES FREED, CHRISTIAN GREY, and ANASTASIA STEELE.

13.   Plaintiff Universal City Studios LLC is a Delaware limited liability company, with its principal place of business located at 100 Universal City Plaza, Universal City, California.  Universal is an internationally-known motion picture studio, which produces and distributes motion pictures in the United States and around the world.  Pursuant to an agreement with FSL, Universal owns exclusive motion picture rights with respect to the Fifty Shades Trilogy.

14.   Plaintiffs are informed and believe, and on that basis allege, that defendant Smash Pictures, Inc. is a California corporation, with its principal place of business at 9619 Canoga Avenue, Chatsworth, California.  Smash Pictures is in the business of producing and distributing adult films, including the XXX Adaptations.

15.   Plaintiffs are informed and believe, and on that basis allege, that defendant Luv Moves is a business entity of unknown form and principal place of business.  Luv Moves sells, markets, and distributes "adult novelties" and other sexually-related products packaged with adult films, including the Luv Moves Package, in California and elsewhere in the United States.

16.   Plaintiffs are informed and believe, and on that basis allege, that defendant Daniel Quinn is a resident of Colchester, Connecticut.  Daniel Quinn is the owner of Smash Pictures.

17. Plaintiffs are informed and believe, and on that basis allege, that defendant Stuart Wall is a resident of Sherman Oaks, California. Stuart Wall is the Vice President, Sales and Marketing, of Smash Pictures, and the producer of the XXX Adaptations.

18. Plaintiffs are informed and believe, and on that basis allege, that defendant James Lane aka Jim Powers is a resident of Northridge, California. Jim Powers is the writer and director of the XXX Adaptations.

19. Plaintiffs are informed and believe, and on that basis allege, that defendant Right Ascension, Inc., doing business as Adult DVD Empire, is a Pennsylvania corporation with its primary place of business at 2140 Woodland Road, Warrendale, Pennsylvania. Right Ascension is in the business of selling, marketing, and distributing adult films and other products, including the Infringing Works, throughout the United States, through the use of the website AdultDVDEmpire.com and other websites.

20. Plaintiffs are informed and believe, and on that basis allege, that Does 1–10 are either entities or individuals who are residents of or present in this Judicial District, and are subject to the jurisdiction of the Court. Each fictitiously named defendant produced, manufactured, distributed, sold, and/or offered for sale the Infringing Works and is liable, jointly and severally, to Plaintiffs for the damages alleged herein. The identities of Does 1–10 are unknown to Plaintiffs at this time. The Complaint will be amended to include the names of such entities or individuals when identified. The named defendants and Does 1–10 are collectively referred to as "Defendants."

## THE FIFTY SHADES TRILOGY

21. E L James is a former TV executive, wife, and mother of two based in London. Her first novel, *Fifty Shades of Grey*, has achieved extraordinary success. It is the first book in a trilogy that follows the romantic and erotic relationship between Anastasia Steele, a naïve college graduate, and Christian Grey, a wealthy

but tormented entrepreneur.  Anastasia first meets the handsome and intimidating business magnate when she interviews him for the school newspaper.  Drawn to one another, Anastasia and Christian embark on a passionately physical love affair. The book contains explicitly erotic scenes featuring elements of bondage/ discipline, dominance/submission, and sadism/masochism.

22.    In *Fifty Shades Darker*, the second novel in the Fifty Shades Trilogy, Anastasia, daunted by Christian's singular tastes and dark secrets, breaks off their relationship to start a new career in publishing.  But when Christian proposes a new arrangement, Anastasia cannot resist rekindling their sensual affair.  As their relationship progresses, she learns more about her lover's harrowing past and his introduction to dominant/submissive relationships.  While Christian wrestles with his inner demons, Anastasia must confront the anger and envy of his former partners.

23.    In the final installment in the Fifty Shades Trilogy, *Fifty Shades Freed*, Christian and Anastasia become husband and wife.  The newlyweds seem to have it all – love, passion, intimacy, wealth, and a world of possibilities for their future.  But Anastasia struggles to share Christian's opulent lifestyle without sacrificing her own identity, while Christian continues to wrestle with the demons of his past.  Just when it seems that they will overcome these obstacles, the drama escalates for Anastasia and Christian when the lives of members of their families are threatened.

24.    *Fifty Shades of Grey*, *Fifty Shades Darker*, and *Fifty Shades Freed* were released as e-books and as print-on-demand paperbacks in Australia by The Writers' Coffee Shop, in May 2011, September 2011, and January 2012, respectively.  Vintage Books, a division of Random House, released the Fifty Shades Trilogy in the United States in April 2012.

25.    The Fifty Shades Trilogy has achieved unprecedented commercial success.  Global sales of the Fifty Shades Trilogy have exceeded 40 million copies

since its release in 2011, with almost 20 million copies sold in the United States alone. The three books in the trilogy have occupied the top three spots on the *New York Times* Paperback Trade Fiction Bestseller List, and each book has held a place on both the Paperback Trade and e-Book Fiction lists for 31 weeks or more as of November 18, 2012. *Fifty Shades of Grey* was number one on USA Today's best-selling books list for 20 weeks in a row, breaking the previous record of 16 weeks. It also is the United Kingdom's fastest-selling paperback book of all time.

26.     The Fifty Shades Trilogy has become a cultural phenomenon. In March 2012, before Vintage Books released paperback editions of the Fifty Shades Trilogy to a mass audience, the *New York Times* reported that *Fifty Shades of Grey* "has electrified women across the country, who have spread the word like gospel on Facebook pages, at school functions and in spin classes." Five months later, in August 2012, *The Atlantic* marveled at "the breadth of its appeal to women and the speed with which it became a household name" and stated that the Trilogy shows how books "can ignite a cultural fervor so intense that tens of millions of people respond to join in a common experience in a relatively short time, as they do with movies or television." Examiner.com declared in October 2012, "It has become nearly impossible to go anywhere without hearing or seeing something about the wildly popular 'Fifty Shades of Grey' trilogy by E.L. James." *Books & Review* announced in August 2012, "It's official: 'Fifty Shades of Grey' has permeated every conceivable crack of human existence. But, then, you don't sell 32 million copies of a book without some sort of cultural shift happening."

27.     FSL owns all rights, title, and interest in the books of the Fifty Shades Trilogy and the characters, dialogue, and storylines expressed therein, which substantially consist of original material owned by FSL and subject to protection under the Copyright Act. FSL is the owner of the federal copyright registrations for the three books of the Fifty Shades Trilogy: Certificate Nos. TX0007583125 (*Fifty Shades of Grey*), TX0007583138 (*Fifty Shades Darker*), and TX0007583107

(*Fifty Shades Freed*).  Pursuant to an agreement with FSL, Universal concluded its acquisition of exclusive motion picture rights to the Fifty Shades Trilogy in November 2012.

28.   FSL has common law rights in the Fifty Shades Trademarks based on its continuous use of the Fifty Shades Trademarks in connection with the sale and distribution of the Fifty Shades Trilogy throughout the United States.  Among other uses, FSL has licensed the use of the Fifty Shades Trademarks in connection with the musical compilation *Fifty Shades of Grey: The Classical Album*, as well as a collection of adult sex toys including handcuffs and other items similar to those distributed in defendants' Luv Moves Package.  In addition to its rights under common law, FSL has applied to register with the United States Patent and Trademark Office the Fifty Shades Trademarks in various classes, including international class 41 for entertainment-related goods and services, including entertainment services and production of films; international class 9 for electrical and scientific apparatus, including DVDs and recorded films; and international class 10 for adult sexual aids.

## DEFENDANTS' INFRINGING WORKS

29.   Seeking to capitalize on the phenomenal success of the Fifty Shades Trilogy, Defendants have produced and are selling, throughout the United States and overseas, the First XXX Adaptation and the Luv Moves Package, and are currently producing two additional infringing XXX Adaptations.

30.   The First XXX Adaptation is an unauthorized derivative of *Fifty Shades of Grey* and *Fifty Shades Darker*.  Smash Pictures proclaimed on its website and the back cover of the DVD case, "Based upon the best selling series of books that has swept the world and coined the new term 'mommy porn,' FIFTY SHADES OF GREY, A XXX ADAPTATION puts the kinky fantasies that you only imagined into vivid color."  The synopsis of the First XXX Adaptation that appears on the back of the DVD box and on the Smash Pictures and Right

Ascension websites highlights its substantial copying from the Fifty Shades Trilogy:

> When an inexperienced college student, Anastasia Steele, meets an extremely wealthy and handsome young business tycoon, Christian Grey, a whirlwind romance encompassing the kinkiest of pleasures soon ensues. Christian, (Ryan Driller) takes the inexperienced virgin Anastasia, (Allie Haze) into a world BDSM role playing. Anastasia is completely swept up and scared as she has never experienced anything like this. She spent her last four years reading English literature while living vicariously through her outgoing roommate Kate (Alexis Ford). What made her charming prince like this? Was it the training in masochism he received at the hands of an older woman Mrs. Robinson (Julia Ann)? How many shades of the object of her love must she push through to find true love?

31. The central character of the XXX Adaptations is Anastasia Steele, identical in name, description, and characterization to the protagonist of the Fifty Shades Trilogy. In both the Fifty Shades Trilogy and the XXX Adaptations, Anastasia is a young, naïve woman who becomes romantically and erotically embroiled with a wealthy entrepreneur. Numerous character details are replicated in the First XXX Adaptation: Anastasia Steele is an English literature major, works at a hardware store, is a virgin at the outset of the story, lives with a roommate named Kate Kavanagh, and bites her lip in tense or uncomfortable moments.

32. The XXX Adaptations recount the progression of Anastasia's relationship with the wealthy but sexually damaged Christian Grey. Defendants' portrayal of Christian Grey in the First XXX Adaptation is substantially identical to the character of Christian Grey in the Fifty Shades Trilogy in every detail: Christian Grey is a highly successful businessman who employs over 40,000 people, describes himself as an adherent of the principles of Andrew Carnegie, and is a self-professed "dominant" who seeks out control-based sexual relationships with women. In both the Fifty Shades Trilogy and the First XXX Adaptation, Christian's initial sexual courtship of Anastasia leads to more substantial feelings, culminating in an ultimate declaration of love.

33.     The XXX Adaptations feature other characters identical to those in the Fifty Shades Trilogy.  In addition to Anastasia Steele and Christian Grey, the First XXX Adaptation portrays Kate Kavanagh, Anastasia's roommate; Elena Lincoln (referred to in both works by the nickname "Mrs. Robinson"), an older woman who introduced Christian to dominant/submissive relationships when he was a teen; and Leila Williams, a former partner of Christian's who becomes jealous of Anastasia and threatens her with a gun.  Smash Pictures has announced that the Second XXX Adaptation features actors playing the roles of Christian's younger adoptive sister Mia and Anastasia's boss Jack Hyde, among other characters in the Fifty Shades Trilogy.

34.     Most of the dialogue in the First XXX Adaption is taken directly, and frequently in verbatim form, from the Fifty Shades Trilogy.  To take just one example, the dialogue in the opening scene, in which Anastasia and Christian first meet, is nearly identical:

| _Fifty Shades of Grey_ (pp. 8 – 14) | First XXX Adaptation |
|---|---|
| "Um. Actually– .  Ms. Kavanagh is indisposed, so she sent me. I hope you don't mind, Mr. Grey." | "Uh.  Ms. Kavanagh is indisposed.  She sent me." |
| "And you are?" | "And your name is?" |
| "Anastasia Steele.  I'm studying English literature with Kate [. . . .]" | "Anastasia Steele.  I'm an English literature major." |
| *  *  *  *  * | |
| "S-sorry.  I'm not used to this." | "Sorry, I-I'm not used to this." |
| "Take all the time you need, Miss Steele." | "Take your time, Ms. Steele.  Take all the time you need." |
| "Do you mind if I record your answers?" | "Do you mind if I record this?" |

| | |
|---|---|
| "After you've taken so much trouble to set up the recorder, you ask me now? [. . .] No, I don't mind." | "You ask me this now?" |
| "Did Kate, I mean, Ms. Kavanagh, explain what the interview was for?" | "Did Kate tell you what the interview was for?" |
| "Yes.  To appear in the graduation issue of the student newspaper as I shall be conferring the degrees at this year's graduation ceremony." | "She said it was for the graduation issue of the school newspaper, since I'm conferring the degrees at the graduation ceremony." |
| "Good.  I have some questions, Mr. Grey." | "Ok, good.  I have some questions." |
| "I thought you might." | "I guessed you might.  You are here to interview me." |
| "You're very young to have amassed such an empire.  To what do you owe your success?" | "You're awful young to have built such a huge empire.  To what do you owe your success?" |
| "Business is all about people, Miss Steele, and I'm very good at judging people.  I know how they tick, what makes them flourish, what doesn't, what inspires, and how to incentivize them.  I employ an exceptional team, and I reward them well." | "People, Ms. Steele.  I'm an excellent judge of people.  You see, business is all about people.  I know what makes a person tick, what drives them, what helps them flourish, and what incentives to apply.  I employ an incredible team, and their rewards are immense." |
| "My belief is to achieve success in any scheme, one has to make oneself master of that scheme, know it inside and out, know every detail.  I work hard, very hard to do that.  I make decisions based on logic and facts.  I have a natural gut instinct that can spot and nurture a good solid idea and good people.  The bottom line is it's always down to good people." | "To succeed, one must become a master of that particular scheme, and know it inside and out, every minute detail.  I work very hard to accomplish that.  I base my decision on fact and logic.  I also have a natural gut instinct that can spot a good idea or person.  The bottom line is, success comes down to having good people on your team." |

-12-

| | |
|---|---|
| "Maybe you're just lucky." | "Ever think you maybe you just got lucky?" |
| "I don't subscribe to luck or chance, Miss Steele.  The harder I work the more luck I seem to have.  It really is all about having the right people on your team and directing their energies accordingly.  I think it was Harvey Firestone who said, 'The growth and development of people is the highest calling of leadership.'" | "Luck does not enter into that equation.  Seems the harder I work the luckier I get.  You do the math.  You have the right people on your team, success will come.  Wasn't it Harvey Firestone that said, "The growth and development of people is the highest calling of leadership."" |
| "You sound like a control freak." | "Sounds like you're a control freak." |
| "Oh, I exercise control in all things, Miss Steele.  [. . .]  Besides, immense power is acquired by assuring yourself in your secret reveries that you were born to control things." | "Oh, I was born to control things, Miss Steele.  Immense power is acquired by exercising control in all things." |
| "Do you feel that you have immense power?" | "Do you feel you have immense power?" |
| "I employ over forty thousand people, Miss Steele.  That gives me a certain sense of responsibility – power, if you will.  If I were to decide I was no longer interested in the telecommunications business and sell, twenty thousand people would struggle to make their mortgage payments after a month or so." | "I have forty thousand employees.  It gives me a certain level of responsibility – or power, if you like.  If I decided I wanted to get out of telecommunications, twenty thousand people would be struggling to make their house payments." |
| "Don't you have a board to answer to?" | "Don't you have a board of directors to answer to?" |
| "I own my company. I don't have to answer to a board." | "I own the company, Miss Steele.  I don't have to answer to anybody." |
| "And do you have any interests outside your work?" | "What do you like to do outside of work?" |

-13-

COMPLAINT

| | |
|---|---|
| "I have varied interests, Miss Steele [. . .]  Very varied." | "I have various interests, some more interesting than others." |
| * * * * * | |
| " I'm a very wealthy man, Miss Steele, and I have expensive and absorbing hobbies." | I'm very wealthy, so I have some expensive and time-consuming hobbies." |
| "You invest in manufacturing.  Why, specifically?" | "You've invested a substantial amount in manufacturing.  Why?" |
| "I like to build things.  I like to know how things work: what makes things tick, how to construct and deconstruct. [. . . .]" | "Because I like to build things.  I want to know things work:  what makes them tick, how to put them together and take them apart." |
| * * * * * | |
| "Do you have a philosophy?  If so, what is it?" | "Do you have a philosophy you follow?" |
| "I don't have a philosophy as such.  Maybe a guiding principle – Carnegie's: 'A man who acquires the ability to take full possession of his own mind may take possession of anything else to which he is justly entitled.'  I'm very singular, driven. I like control – of myself and those around me." | "I have a guiding principle I follow.  Carnegie once said, 'A man who acquires the ability to take full possession of his own mind, may take possession of anything else to which he is justly entitled.' I take control – of myself and all those around me." |
| "So you want to possess things?" | "You want to possess things?" |
| "I want to deserve to possess them, but yes, bottom line, I do." | "To deserve to possess them, yes.  Yes, I do." |
| "You sound like the ultimate consumer." | "That kind of makes you the ultimate consumer." |
| "I am." | "That I am." |

| | |
|---|---|
| * * * * * | |
| "Have you had to sacrifice family life for you work?" | "Have you sacrificed family life for your work?" |
| "I have a family.  I have a brother and a sister and two loving parents.  I'm not interested in extending my family beyond that." | "I have a family.  I have parents and a brother and sister.  Going beyond that does not interest me." |
| "Are you gay, Mr. Grey?" | "Are you gay?" |
| "No, Anastasia, I'm not." | "No, Anastasia.  I definitely am not." |
| "I apologize.  It's, um . . . written here." | "Um.  Sorry, I mean – I apologize.  It's just written here." |
| "These aren't your own questions?" | "These are not your questions?" |
| "Er . . . no.  Kate – Miss Kavanagh – she compiled the questions." | "No, Kate – I mean Ms. Kavanagh – she wrote them." |
| "Are you colleagues on the student paper? | "Do you work with her on the school newspaper." |
| "No.  She's my roommate. [. . .] I was drafted.  She's not well." | "No, I'm her roommate.  She was sick, so she sent me.  Um, I kind of just got drafted." |
| "That explains a great deal." | "Hm.  That explains a great deal." |

35.    Virtually all of the events portrayed in the First XXX Adaptation are copied directly from the Fifty Shades Trilogy, including but not limited to the following:

   a.    As in *Fifty Shades of Grey*, the First XXX Adaptation begins with an interview of Christian for the college newspaper, with Anastasia filling in for her sick roommate.  In both works,

Anastasia arrives slightly flustered and messy, falls to the floor, and encounters well-dressed Christian in a grey suit and tie.

b.  As in *Fifty Shades of Grey*, after the interview, Christian sends Anastasia a box of rare books, including a handwritten card with the following quotation from *Tess of the d'Urbervilles*: "Why didn't you tell me there was danger?  Why didn't you warn me?  Ladies know what to guard against, because they read novels that tell them of these tricks . . . ."

c.  As in *Fifty Shades of Grey*, Anastasia, while intoxicated at a bar, speaks with Christian on her cell phone and confronts him about this gift.

d.  As in *Fifty Shades of Grey*, Christian takes an inebriated Anastasia home and puts her to bed; when she wakes, there is a glass of orange juice and two aspirin on the bedside table. Christian later explains that he used cell phone tracking technology to locate Anastasia at the bar and chides her for drinking on an empty stomach.

e.  As in *Fifty Shades of Grey*, Christian shows Anastasia his "playroom," stocked with whips, chains, and other items Christian uses in his dominant/submissive sexual activities.  He allows her to inspect a "flogger," and describes himself as a "dominant" who uses these instruments on willing submissive women.

f.  As in *Fifty Shades of Grey*, Christian presents Anastasia with a contract that would govern their dominant/submissive relationship, which includes regulations of dress code, exercise, and personal grooming.  Anastasia gently protests and

1  confesses she is a virgin.  Christian responds with angry
2  surprise.

3  g.  Christian takes Anastasia's virginity in a fashion substantially
4      similar to that described in *Fifty Shades of Grey*.

5  h.  As in *Fifty Shades of Grey*, Christian and Anastasia bathe
6      together in a white tub, after which Christian again asks
7      Anastasia to agree to a dominant/submissive relationship with
8      him.  They have sex in the same manner described in *Fifty*
9      *Shades of Grey*, with Christian binding Anastasia's hands using
10     his signature silver-grey necktie.

11  i.  As in *Fifty Shades of Grey*, in the XXX Adaptation Anastasia
12     later emails Christian, telling him she is not willing to accept
13     his rules and take the role of his submissive.  In both works,
14     Christian immediately goes to her apartment and tries to
15     convince her to change her mind.  They then proceed to have
16     sex in the same manner described in *Fifty Shades of Grey*.

17  j.  As in *Fifty Shades of Grey*, Christian and Anastasia at one point
18     have sex while Anastasia is blindfolded and forced to listen to
19     music through headphones.

20  k.  As in *Fifty Shades Darker*, Christian and Anastasia attend a
21     masquerade ball.  At the ball, Elena Lincoln/"Mrs. Robinson"
22     tells Anastasia about her history with Christian and Anastasia's
23     "first dance" is auctioned for $100,000.

24  l.  As in *Fifty Shades Darker*, Leila Williams, a jilted ex-lover of
25     Christian's, confronts Anastasia with a gun.  In both works, the
26     confrontation ends without violence and Leila is hospitalized.

27  m.  As in *Fifty Shades Darker*, Christian declares his love and
28     proposes marriage to Anastasia.

-17-

36.     The XXX Adaptations make no attempt to parody, comment on, or poke fun at the Fifty Shades Trilogy in any way.  Defendants have freely admitted to the media that they have sought to replicate the Fifty Shades Trilogy as accurately as possible.  Stuart Wall, Vice President of Smash Pictures, admitted in an interview with the *L.A. Weekly* newspaper that "we're choosing to go with a XXX adaption which will stay very true to the book and its S&M-themed romance."  He also said that "the entire cast is reading the books as we speak, and director Jim Powers is writing the script to be as close to the series as he can get."  In Smash Pictures' press release for the First XXX Adaptation, owner Daniel Quinn commented, "It's a blend of book one and two of the trilogy. . . . Don't intend to watch this like a run-of-the-mill porno, watch it like a mainstream movie that includes hardcore sex."  Jim Powers, the writer and director of the XXX Adaptations, told XBIZ, a new organization that covers the adult entertainment industry, "I stayed faithful to the core material."  Regarding the First XXX Adaptation, Powers stated, "I took the main elements of the first book . . . and utilized the most interesting character from the second: his insane ex-sub.  Also the masquerade ball is from the second one, as well as the dance auction."

37.     Defendants are marketing the Infringing Works by making prominent use of the Fifty Shades Trademarks in the titles of the Infringing Works, their packaging, and in advertisements and promotions:

-18-

COMPLAINT



**The First XXX Adaptation**



**The Second XXX Adaptation**



**Fifty Shades of Pleasure
Play Kit & Movie**



**Shelf Display for the
First XXX Adaptation**

38.     In addition to using the Fifty Shades Trademarks, Defendants adopted an almost identical typeface for the title in the upper right corner and used, in a confusingly similar fashion, the iconic images from the book covers of the Fifty Shades Trilogy in the packaging of the Infringing Works – the silver-grey necktie

from the *Fifty Shades of Grey* cover, the feathered silver masque from the *Fifty Shades Darker* cover, and the handcuffs from the *Fifty Shades Freed* cover:



**Smash Pictures' First XXX Adaptation DVD Cover**



**FSL's *Fifty Shades of Grey* Book Cover**



**FSL's *Fifty Shades Darker* Book Cover**



**FSL's *Fifty Shades Freed* Book Cover**

39.   By using the Fifty Shades Trademarks in packaging, advertising, and promoting the Infringing Works, Defendants are intentionally free-riding on the

-20-

1  Fifty Shades Trilogy's massive international popularity and confusing the public

2  into believing that FSL is associated with the Infringing Works, whether through

3  creation, sponsorship, or other affiliation.

### FIRST CLAIM FOR RELIEF

### COPYRIGHT INFRINGEMENT – 17 U.S.C. § 106

6      40.    Plaintiffs repeat, reallege, and incorporate herein by reference every

7  allegation contained in paragraphs 1 through 39.

8      41.    FSL is the owner of the federal copyright registrations for the three

9  books of the Fifty Shades Trilogy: Certificate Nos. TX0007583125 (*Fifty Shades*

10  *of Grey*), TX0007583138 (*Fifty Shades Darker*), and TX0007583107 (*Fifty Shades*

11  *Freed*).  Pursuant to an agreement with FSL, Universal is the owner of exclusive

12  motion picture rights to the Fifty Shades Trilogy.

13      42.    By virtue of the acts complained of herein, Defendants have directly,

14  vicariously, and/or contributorily infringed Plaintiffs' copyrights in the Fifty

15  Shades Trilogy, and have caused or induced others to infringe Plaintiffs'

16  copyrights, and unless enjoined will continue to infringe and cause others to

17  infringe Plaintiffs' copyrights by reproducing, displaying, distributing, and

18  utilizing for purposes of trade unauthorized derivative versions of the Fifty Shades

19  Trilogy in violation of 17 U.S.C. §§ 106 and 501.

20      43.    All of Defendants' acts of infringement alleged herein have been

21  performed without the permission, license, or consent of Plaintiffs, and have been

22  willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs'

23  rights.

24      44.    Upon information and belief, Defendants have received substantial

25  benefits in connection with the unauthorized reproduction, display, distribution,

26  and utilization for purposes of trade and promotion of derivative versions of the

27  Fifty Shades Trilogy.

28

-21-

45.     As a direct and proximate result of Defendants' infringement of Plaintiffs' exclusive rights under copyright law, Plaintiffs are entitled to actual damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b), or statutory damages in an amount up to $150,000 per infringed work..

46.     By virtue of the acts complained of herein, Defendants have caused, and are causing, substantial injury to Plaintiffs, which damage cannot be accurately computed, and unless this Court enjoins Defendants from further commission of said acts, Plaintiffs will suffer irreparable injury, for which there is no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringements of their copyrights and exclusive rights under these copyrights, as well as an order requiring the impoundment and destruction of copies of the Infringing Works in the possession, custody, or control of Defendants.

## SECOND CLAIM FOR RELIEF

### FALSE DESIGNATION OF ORIGIN AND

### UNFAIR COMPETITION – 15 U.S.C. § 1125(a)(1)(A)

47.     Plaintiffs repeat, reallege, and incorporate herein by reference every allegation contained in paragraphs 1 through 46.

48.     The Fifty Shades Trademarks are used in commerce, are non-functional, are distinctive, and have acquired secondary meaning in the marketplace.

49.     As described above in detail, Defendants are using in commerce, without FSL's authorization or consent and in an explicitly misleading manner, the Fifty Shades Trademarks in connection with the advertisement, offering for sale, and/or sale of the Infringing Works in violation of 15 U.S.C. § 1125(a)(1)(A).

50.     FSL is informed and believes, and on that basis alleges, that Defendants had actual knowledge of FSL's ownership and prior use of the Fifty Shades Trademarks prior to commencing the conduct complained of herein.

51.    FSL is informed and believes, and on that basis alleges, that Defendants are engaging in the conduct complained of herein with the intent to compete unfairly against FSL, to trade upon FSL's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that the Infringing Works are associated with, sponsored by, or approved by FSL, when they are not.

52.    As a result of the acts complained of herein, Defendants have created a likelihood of injury to FSL's business reputation and to the reputation and goodwill surrounding FSL's Fifty Shades Trilogy, and a strong likelihood of consumer confusion as to the source of origin or relationship of FSL's and Defendants' goods, and has otherwise competed unfairly with FSL.

53.    Defendants' acts complained of herein were willful and deliberate and have caused damage to FSL in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

54.    Defendants' willful and deliberate acts constituting false designation of origin have caused, and will continue to cause, irreparable injury to FSL's businesses, substantial loss of goodwill and reputation, and pecuniary damages to FSL and consequently have caused, and will continue to cause, a substantial impact on United States domestic and foreign commerce.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of FSL's rights, for which FSL has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### FALSE ADVERTISING – 15 U.S.C. § 1125(a)(1)(B)

55.    Plaintiffs repeat, reallege, and incorporate herein by reference every allegation contained in paragraphs 1 through 54.

56.     Defendants' actions described above and specifically, without limitation, Defendants' unauthorized use of the Fifty Shades Trademarks, and confusingly similar variations thereof, in commerce to advertise, market, and sell the Infringing Works and Defendants' express and/or implied representations that the sale of Infringing Works originated with or was endorsed or approved by FSL constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

57.     Consumers are likely to be misled and deceived into believing, based on Defendants' express and/or implied representations and conduct in connection with the advertisement, offering for sale, and/or sale of the Infringing Works, that the Infringing Works are associated with, sponsored by, or approved by FSL, when in fact they are not.

58.     Defendants knew or should have known that their representations and conduct were false or likely to mislead.

59.     Defendants' acts complained of herein were willful and deliberate and have caused damage to FSL in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

60.     Defendants' willful and deliberate acts of false advertising have caused, and will continue to cause, irreparable injury to FSL's businesses, substantial loss of goodwill and reputation, and pecuniary damages to FSL.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of FSL's rights, for which FSL has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

## DILUTION OF FAMOUS MARK – 15 U.S.C. § 1125(c)

61.     Plaintiffs repeat, reallege, and incorporate herein by reference every allegation contained in paragraphs 1 through 60.

62.     By virtue of the widespread use in commerce of the Fifty Shades Trademarks, in the United States and worldwide, for the purposes of advertising and publicity for the Fifty Shades Trilogy, and by virtue of the more than 40 million worldwide sales of the Fifty Shades Trilogy, the Fifty Shades Trademarks have at all relevant times been famous within the meaning of 15 U.S.C. § 1125(c)(2)(A).

63.     Defendants' unauthorized use of the Fifty Shades Trademarks in commerce to advertise, market, and sell the Infringing Works has diluted, and will continue to dilute, the distinctive quality of the Fifty Shades Trademarks by lessening their capacity to identify FSL's works, authorized derivative works, or other authorized products and by harming the reputation of the Fifty Shades Trademarks, in violation of 15 U.S.C. § 1125(a)(1)(B).

64.     Defendants' acts complained of herein were willful and deliberate and have caused damage to FSL in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

65.     Defendants' willful and deliberate acts of trademark dilution have caused, and will continue to cause, irreparable injury to FSL's business, substantial loss of goodwill and reputation, and pecuniary damages to FSL.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of FSL's rights, for which FSL has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### CALIFORNIA STATUTORY UNFAIR COMPETITION

### Cal. Business & Professions Code § 17200, *et seq.*

66.     Plaintiffs repeat, reallege, and incorporate herein by reference every allegation contained in paragraphs 1 through 65.

67.    By using identical or confusingly similar variations of the Fifty Shades Trademarks, Defendants have willfully and without authorization appropriated the exclusive property of FSL.  As such, Defendants have taken advantage of and usurped the investment and goodwill of FSL and have capitalized on the market created by FSL for the Fifty Shades Trilogy, any authorized derivative works, and other authorized products.

68.    As a result of Defendants' exploitation of the Fifty Shades Trademarks, Defendants have been and will be able to pass off and sell the Infringing Works as substitutes for FSL's books, any authorized derivate works, or other authorized products.

69.    By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among the public and have unfairly competed in violation of California Business & Professions Code Section 17200, *et. seq.*

70.    Defendants' aforementioned acts constitute unlawful, unfair, malicious, or fraudulent business practices, which have damaged and irreparably injured FSL. Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of FSL's rights, for which FSL has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**

**CALIFORNIA STATUTORY FALSE ADVERTISING**

**Cal. Business & Professions Code § 17500, *et seq.***

71.    Plaintiffs repeat, reallege, and incorporate herein by reference every allegation contained in paragraphs 1 through 70.

72.    Defendants' actions described above and specifically, without limitation, their use of the Fifty Shades Trademarks in commerce to advertise, market, and sell the Infringing Works and their express and/or implied representations that the sale of the Infringing Works originated with or was

endorsed or approved by FSL constitutes false advertising in violation of California Business & Professions Code Section 17500, *et. seq.*

73. Consumers are likely to be misled and deceived into believing, based on Defendants' express and/or implied representations and conduct in connection with the advertisement, offering for sale, and/or sale of the Infringing Works, that the Infringing Works are associated with, sponsored by, or approved by FSL, when in fact they are not.

74. Defendants knew or should have known that their express and/or implied representations and conduct were false or likely to mislead.

75. Defendants' acts of false advertising have caused, and will continue to cause, irreparable injury, loss of reputation, and pecuniary damages. Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined by this Court from further violation of FSL's rights, for which FSL has no adequate remedy at law.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**CALIFORNIA COMMON LAW UNFAIR COMPETITION**

76. Plaintiffs repeat, reallege, and incorporate herein by reference every allegation contained in paragraphs 1 through 75.

77. By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among the public and have unfairly competed in violation of the common law of the State of California.

78. Defendants' use of the Fifty Shades Trademarks in the manner alleged above constitutes a knowing and willful passing off of the Infringing Works as being rendered, sponsored, or otherwise approved by or connected with FSL, and the natural, probable tendency and effect of Defendants' actions is to deceive the consuming public.

79. Defendants' use of the Fifty Shades Trademarks in the manner alleged above constitutes the knowing and willful misappropriation of the goodwill,

reputation, and public recognition of the Fifty Shades Trademarks, as developed by FSL through the investment of significant time, skill, and effort.  Defendants have appropriated the marks without consideration or consent, at no cost to themselves, and are unjustly reaping the benefit of the Fifty Shades Trademarks.

80.    Defendants' willful acts of unfair competition constitute acts of fraud, oppression, and malice.  Accordingly, FSL is entitled to punitive or exemplary damages pursuant to California Civil Code Section 3294(a).

81.    Defendants' willful and deliberate acts of unfair competition have caused, and will continue to cause, irreparable injury to FSL's business, substantial loss of goodwill and reputation, and pecuniary damages to FSL.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of FSL's rights, for which FSL has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    For entry of a preliminary and permanent injunction prohibiting Defendants and each of their agents, servants, owners, shareholders, partners, employees, attorneys, assigns, and all others in privity with or acting in concert with them from committing further infringing acts including:

(1)    Reproducing, publishing, distributing, advertising, selling, or otherwise disseminating, electronically or otherwise, the Infringing Works;

(2)    Using the Fifty Shades Trademarks in the advertising or sale of motion pictures, DVDs, video-on-demand, streaming video, adult novelty merchandise, or any related goods or services;

(3)    Otherwise infringing Plaintiffs' trademarks, service marks, and trade names, unfairly competing with Plaintiffs, or otherwise injuring Plaintiffs' business reputation in any manner;

B.     For an order that Defendants be directed to deliver up for destruction, pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118:

(1)     All copies, electronic or otherwise, of the Infringing Works in their possession, custody, or control;

(2)     All DVDs, DVD covers, posters, trailers, advertisements, billboards, brochures, labels, signs, prints, packages, wrappers, publications, software and all other materials in Defendants' possession or under their control that use the Fifty Shades Trademarks, or any other reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, dies, matrices, patterns, and other means of making or duplicating the same.

C.     For an order that Defendants be directed to recall any copies, electronic or otherwise, of the Infringing Works that are already out of their possession and/or in circulation, and to take such steps as are necessary to ensure their return.

D.     For an order directing that Defendants engage in corrective advertising to disclaim any association between Plaintiffs and Defendants, to remedy the actual and potential customer confusion in the marketplace due to Defendants' unlawful acts, and to do so in a form, manner, and frequency that is acceptable to Plaintiffs and the Court.

E.     That the Court award Plaintiffs compensatory damages and lost profits in an amount according to proof, and award Plaintiffs exemplary or punitive damages to the extent permitted by law.

F.     That the Court award actual damages for copyright and trademark infringement pursuant to 17 U.S.C. §§ 504 and 505 and 15 U.S.C. § 1117(a), including at Plaintiffs' election statutory damages for copyright infringement pursuant to 17 U.S.C. § 504(c).

G.     For an order that Defendants account to and pay over to Plaintiffs all profits derived from the infringing use of Plaintiffs' copyrights and trademarks.

H.     For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiffs.

I.     For costs of suit, attorneys' fees, prejudgment interest, and such other and further relief as the Court deems just and proper.

Dated:  November 27, 2012                    JENNER & BLOCK LLP

By _____
        Andrew J. Thomas

Attorneys for Plaintiffs
Fifty Shades Limited and
Universal City Studios LLC

-30-

## **JURY DEMAND**

Plaintiffs Fifty Shades Limited and Universal City Studios, LLC respectfully request a jury trial on all issues so triable.

Dated:  November 27, 2012

JENNER & BLOCK LLP

By _____
       Andrew J. Thomas

Attorneys for Plaintiffs
Fifty Shades Limited and
Universal City Studios LLC

COMPLAINT

JENNER & BLOCK LLP
Andrew J. Thomas (SBN 159533)
David R. Singer (SBN 204699)
Lisa J. Kohn (SBN 260236)
633 West 5th Street, Suite 3600
Los Angeles, CA 90071

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIFTY SHADES LIMITED, a United Kingdom private company; and UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company, <br> PLAINTIFF(S) <br><br> v. <br><br> SMASH PICTURES, INC., a California corporation; LUV MOVES, a business entity of unknown form; DANIEL QUINN, an individual; STUART WALL, an individual; JAMES LANE aka JIM POWERS, an individual; RIGHT ASCENSION, INC., d/b/a ADULT DVD EMPIRE, a Pennsylvania corporation; and DOES 1 through 10, inclusive, <br> DEFENDANT(S). | CASE NUMBER <br><br> **CV12-10111**-ABC (SHx) <br><br> **SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Andrew J. Thomas_____, whose address is _633 West 5th Street, Suite 3600, Los Angeles, CA 90071_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _November 27, 2012_____     By: _____
                                                                 Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                    **SUMMONS**

JENNER & BLOCK LLP
Andrew J. Thomas (SBN 159533)
David R. Singer (SBN 204699)
Lisa J. Kohn (SBN 260236)
633 West 5th Street, Suite 3600
Los Angeles, CA 90071

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

FIFTY SHADES LIMITED, a United Kingdom
private company; and UNIVERSAL CITY STUDIOS
LLC, a Delaware limited liability company,

PLAINTIFF(S),

v.

SMASH PICTURES, INC., a California corporation; LUV MOVES, a
business entity of unknown form; DANIEL QUINN, an individual;
STUART WALL, an individual; JAMES LANE aka JIM POWERS, an
individual; RIGHT ASCENSION, INC., d/b/a ADULT DVD EMPIRE,
a Pennsylvania corporation; and DOES 1 through 10, inclusive,
DEFENDANT(S).

CASE NUMBER

CV12-10111 -ABC (SHx)

**SUMMONS**

TO:      DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, Andrew J. Thomas_____, whose address is
633 West 5th Street, Suite 3600, Los Angeles, CA 90071_____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint. You also must file
your answer or motion with the court.

Clerk, U.S. District Court

Dated: November 27, 2012_____

By: _____ **MARILYN DAVIS**

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Audrey B. Collins and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV12- 10111 ABC (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you